IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:            )
                             )
PHYLLIS WENDLAND,            )    CASE NO. BK05-42917
                             )
                Debtor(s).   )        CH. 7

<u>MEMORANDUM</u>

Hearing was held in Lincoln, Nebraska, on October 5, 2005, on Exchange Bank's objection to exemptions (Fil. #6) and debtor's resistance (Fil. #9). Kevin Urbom appeared for the debtor, and Michael Snyder appeared for Exchange Bank. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

The objection is granted as to the tool-of-the-trade exemption and denied as to the homestead exemption.

Exchange Bank has objected to two of the debtor's claimed exemptions: her homestead exemption and her tool-of-the-trade exemption in a car. The debtor claimed as exempt the equity in her home in Arapahoe, Nebraska, under the homestead exemption of Neb. Rev. Stat. § 40-101. She also claimed the full $500 value of her car as exempt under the tool-of-the-trade exemption of Neb. Rev. Stat. § 25-1556(4).

1.    Tool-of-the-trade exemption

A debtor may exempt the value of his or her interest, not exceeding an aggregate fair market value of $2,400, in implements, tools, or professional books and supplies held for use in the principal trade or business of the debtor or his or her family, which may include one motor vehicle used by the debtor in connection with his or her trade or business or to commute to and from his or her place of trade or business. Neb. Rev. Stat. § 25-1556(4).

In this case, the debtor is not employed. The car is her sole means of transportation. The bank argues that she cannot claim an exemption in a vehicle under § 25-1556(4) because she does not use the vehicle in connection with a job. In a case in this district involving a claimed § 25-1556(4) exemption by a stay-at-home mother, the exemption was denied for the reason that the plain language of the statute limits the availability of the exemption to those debtors who work in or commute to a principal trade or

business for which they are compensated. <u>In re Daniel & Margaret Mixan</u>, Neb. Bkr. 01:83 (Bankr. D. Neb. Apr. 2, 2001). The discussion in <u>Mixan</u> is equally relevant here:

> The legislative history of the 1997 amendment to this statutory section reflects a similar understanding by the lawmakers.
>
> Senator David Landis, speaking to the Unicameral in support of amendments to the Nebraska exemption statutes to raise the limit of the homestead exemption and the personal property exemption, noted, in reference to the tool of the trade exemption:
>
>> [Raising the tool of the trade exemption to $2,400] allows the person who has a car that they use to drive to and from work to use this tools of the trade exemption to the maximum of $2,400 to keep that portion of or some element of a car.  In other words, you get to keep a clunker.  Without it, I think the chance of being able to keep a job is significantly prejudiced.
>>
>> * * *
>>
>> [The amendments to the exemption statutes will] allow people who've gone through bankruptcy or who have had a judgment . . . an execution of judgment against them to continue to survive, hold a job, work, and not become a drain on society because they get to keep enough so that they make a fresh start and don't fall on public support for their livelihood[.]
>
> Transcript prepared by the Clerk of the Legislature of hearings in the Nebraska Legislature, April 10, 1997, at 3802-03.
>
> Presumably, if the legislators had intended to extend the exemption to any debtor who owned a vehicle, rather than only to those debtors who use a vehicle in connection with their employment, they would have expressed that intention in the language of the statute.

Neb. Bkr. 01:83 at 5-6.

On that basis, the bank's objection to the claimed exemption under § 25-1556(4) will be granted. However, the debtor will be permitted to amend her schedules to exempt the vehicle under § 25-1552, if applicable.

2.   Homestead exemption

The availability of the homestead exemption is limited to married persons or those who are the head of a family. See Neb. Rev. Stat. §§ 40-101, -102, and -115. The purpose of the exemption is to protect a debtor and his or her family in a home from forced sale on execution or attachment. Blankenau v. Landess, 626 N.W.2d 588, 595 (Neb. 2001) (citing Fisher v. Kellogg, 258 N.W. 404 (Neb. 1935)).

In the present case, the debtor is a recently widowed retiree. She and her husband lived in the house before he passed away, and she intends to continue living there. Her 19-year-old granddaughter stays with her part-time to cook, do housework, and assist her as necessary, but is not the debtor's dependent.

The bank's appraiser values the property at $49,000. A real estate agent who furnished a market estimate of value for the debtor values the property at $35,000 to $40,000, but opines that it may take six months to realize a price at the higher end of that range. The debtor owes $33,000 on the property.

The bank takes the position that the debtor, as a single person with no dependents, does not qualify for the homestead exemption because she is not married nor is she a "head of family" under Nebraska law. The bank argues that she is not a "head of family" because she does not have anyone who is listed in the class of persons in § 40-115 residing with her. That section defines head of a family as:

[E]very person who has residing on the premises with him or her and under his or her care and maintenance:

(1) His or her minor child or the minor child of his or her deceased wife or husband;

(2) A minor brother or sister or the minor child of a deceased brother or sister;

(3) A father, mother, grandfather, or grandmother;

(4) The father, mother, grandfather, or grandmother of a deceased husband or wife;

-3-

(5) An unmarried sister, brother, or any other of the relatives mentioned in this section who have attained the age of majority and are unable to take care of or support themselves; or

(6) A surviving spouse who resides in property which would have qualified for a homestead exemption if the deceased spouse were still alive and married to the surviving spouse.

In essence, the bank asserts that the debtor, as a widow, would have to live with someone else to qualify as head of a family under § 40-115(6).

The Nebraska courts have long recognized that homestead law is to be liberally construed in favor of those for whose benefit it was enacted. <u>Landon v. Pettijohn</u>, 438 N.W.2d 757, 761 (Neb. 1989).

The same principle has been applied in the bankruptcy court to permit married couples, with or without dependents, and single persons with dependents to claim a homestead exemption, <u>see</u> <u>In re Roberts</u>, 211 B.R. 696 (Bankr. D. Neb. 1997) and 215 B.R. 197 (Bankr. D. Neb. 1997), <u>aff'd</u>, 219 B.R. 235 (B.A.P. 8th Cir. 1998). The appellate decision in <u>Roberts</u> makes clear that "[t]he category of individuals entitled to claim a homestead exemption . . . includes married persons, irrespective of the status as 'head of a family'." 219 B.R. at 238. "Only if [a] claimant is not married does one need to refer to the definition of 'head of household' in [Section] 40-115 to determine if the claimant qualifies for the exemption." <u>Id.</u>

Under that precedent, the head-of-a-family issue need not be reached here. The debtor testified at her § 341 meeting that she and her late husband lived in the house. Therefore, she had homestead rights as a married person. Long-standing Nebraska case law states that once a person qualifies for a homestead exemption, he or she does not lose that status. <u>See</u> <u>Roberts</u>, 211 B.R. at 698 (citing <u>Palmer v. Sawyer</u>, 103 N.W. 1088 (Neb. 1905) ("when a homestead is once acquired, the right to the continuous enjoyment of it can only be defeated by the voluntary act of the claimant"). <u>See also</u> <u>Struempler v. Peterson</u>, 206 N.W.2d 629, 631 (Neb. 1973); <u>Karls v. Nichols</u>, 28 N.W.2d 595, 597 (Neb. 1947); <u>U.S. Nat'l Bank of Omaha v. Simonds</u>, 273 N.W. 187, 188 (Neb. 1937); <u>Dougherty v. White</u>, 200 N.W. 884, 885-86 (Neb. 1924). As a result, the debtor is eligible to claim a homestead exemption.

In the alternative, the debtor could claim an exemption under

-4-

the head-of-a-family statute. The legislative history of the 1994 amendment to § 40-115, which added subparagraph (6) regarding a surviving spouse, makes abundantly clear that the intention of the amendment was to protect individuals in the debtor's position. The amendment was introduced in response to the unpublished decision of In re Wilma J. Henry, Case No. 91-41972 (Bankr. D. Neb. June 15, 1992), in which the Chapter 13 trustee's objection to the debtor's homestead exemption on what appears to be the same basis as the bank's in the present case – that the debtor, as a widow living alone, does not qualify as head of a family — was granted.

Senator John Lindsay introduced LB 760 to expand the "head of household" definition to allow widowed individuals to retain their homestead exemption if the property being exempted would have qualified for a homestead exemption had the deceased spouse been alive. The language was intended to close the gap through which widowed persons fell when attempting to obtain a homestead exemption in bankruptcy. Senator Lindsay stated that the bill "simply makes clear that a surviving spouse, who resides in the property which otherwise would have qualified as homestead exemption, does not lose that simply by virtue of the fact that the spouse is deceased." Transcript prepared by the Clerk of the Legislature of floor debate in the Nebraska Legislature, January 12, 1994, at 7943.

Upon questioning by a colleague as to whether the proposed provision would apply only to persons widowed during the pendency of the bankruptcy case or whether it would also apply in a situation where the spouse died last year and the surviving spouse wants to file bankruptcy this year, Senator Lindsay said it was intended to apply in both circumstances. Id. at 7944-45.

With that background in mind, it is apparent that, while the numbering system of § 40-115 may not be as unambiguous as it could have been,[1] the Unicameral intended to permit widowed persons who live alone but who could have claimed a homestead exemption if their spouse were alive to continue to be able to claim it.

The bank's objection to the debtor's claimed homestead exemption will be overruled.

---

[1]Considering the provision's legislative history as well as the illogical and impossible result of a plain and literal reading of § 40-115(6), it appears that the drafters' intended result was to have the current initial paragraph of § 40-115 broken down into paragraph "(a)" with subparagraphs (1) through (5), and what is currently subparagraph (6) re-characterized as paragraph "(b)".

Separate order will be entered.

DATED:    October 25, 2005

                                    BY THE COURT:

                                    /s/ Timothy J. Mahoney
                                    Chief Judge

Notice given by the Court to:
        *Michael Snyder
        Kevin Urbom
        Philip Kelly
        United States Trustee

Movant (*) is responsible for giving notice of this order to all other parties not
listed above if required by rule or statute.